**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

Paul R. Vannatta and Jennifer S. Vannatta, Appellants,

v.

Town of Sullivan's Island Board of Zoning Appeals, Respondent.

Appellate Case No. 2025-001337

---

Appeal From Charleston County
Thomas J. Rode, Circuit Court Judge

---

Memorandum Opinion No. 2026-MO-014
Heard May 19, 2026 – Filed July 1, 2026

---

**AFFIRMED**

---

James Bernard Hood, of Charleston and Deborah Harrison Sheffield, of Columbia, both of Hood Law Firm, LLC, for Appellants.

George Trenholm Walker, James Whittington Clement, and John Phillips Linton, Jr., all of Walker Gressette Linton, LLC, of Charleston, for Respondent.

---

**PER CURIAM:** This appeal involves Paul R. Vannatta and Jennifer S. Vannatta's (the Vannattas') challenge to section 21-75(B)(2) of the Town of Sullivan's Island

(the Town) Zoning Ordinance.  The ordinance includes two provisions that prohibit them from building their proposed dock: (1) the Geographic Restriction, which prohibits docks in the Recreation and Conservation (RC-2) Area District[1] between Station 18 and Station 27; and (2) the Dock Length Restriction, which limits the length of docks to 300 feet but provides an exception to allow docks up to 800 feet to access a creek that is at least 200 feet wide if the dock does not cross a creek that is greater than 8 feet wide.[2]  The Vannattas argue section 21-75(B)(2) is unconstitutional because it (1) constitutes illegal reverse spot zoning; (2) violates substantive due process because the ordinance's restrictions are arbitrary, capricious, or unreasonable; and (3) violates the Equal Protection Clause.  In the alternative, the Vannattas assert they are entitled to a variance.  We affirm.

## I.    Constitutional Challenges

"A municipal ordinance is a legislative enactment and is presumed to be constitutional." *Ani Creation, Inc. v. City of Myrtle Beach Bd. of Zoning Appeals*, 440 S.C. 266, 278, 890 S.E.2d 748, 754 (2023) (quoting *Town of Scranton v. Willoughby*, 306 S.C. 421, 422, 412 S.E.2d 424, 425 (1991)).  "Thus, courts may only declare a municipal ordinance unconstitutional 'when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution.'"  *Id.* (quoting *McMaster v. Columbia Bd. of Zoning Appeals*, 395 S.C. 499, 504, 719 S.E.2d 660, 663 (2011)).  "The burden of establishing the invalidity of a zoning ordinance is on the party attacking it to establish by clear and convincing evidence that the acts of the city council were arbitrary, unreasonable, and unjust."  *Id.* at 279, 890 S.E.2d at 754-55.

### A.  Reverse Spot Zoning

The Vannattas assert that the Town's prohibition of their dock constitutes improper reverse spot zoning because it imposes a significant land-use restriction not imposed on all neighboring properties.[3]  We disagree.  "Legal challenges to [spot

---

[1] RC-2 is on the marsh side of the Town; RC-1 is on the ocean side.  Town of Sullivan's Island Zoning Ordinance §§ 21-67 to -68.

[2] The Vannattas' proposed dock was 486 feet long to access a 62-foot-wide creek at the proposed dock site.

[3] At oral argument, the Vannattas acknowledged they were arguing that section 21-75(B)(2) was reverse spot zoning rather than traditional spot zoning.  *See Ani Creation*, 440 S.C. at 282, 890 S.E.2d at 756 ("[S]pot zoning may arise in two ways: (1) by an affirmative legislative act that affects the parcel at issue (traditional

zoning] are generally based on allegations and proof of discriminatory treatment of a single landowner, inconsistency with the comprehensive plan, incompatibility with neighboring uses, and harm to the general welfare of the community." *Ani Creation*, at 283, 890 S.E.2d at 757 (quoting 39 Am. Jur. *Proof of Facts* 3d 433 (West 2023)). "[R]everse spot zoning occurs when a zoning ordinance restricts the use of a property when virtually all the property's adjoining neighbors are not subject to the use restriction." *Ani Creation*, 440 S.C. at 282, 890 S.E.2d at 756. It happens when a municipality fails to "rezone a portion of land to bring it into conformity with similar surrounding parcels that are otherwise indistinguishable" creating a zoning island. *Id.* Here, section 21-75(B)(2) was created by an affirmative legislative act and, therefore, does not fit within the accepted definition of reverse spot zoning. *See id.* at 283, 890 S.E.2d at 757 (holding a zoning ordinance's prohibition of a certain retail use did not fit within the accepted definition of reverse spot zoning because it was not the result of a zoning "island" that developed as the surrounding area was rezoned; the city's affirmative legislative act created it).

Furthermore, the Town did not single out the Property. The Geographic Restriction applies to a mile of marshland, which includes approximately thirty-nine adjoining lots. While there may be several co-existent laws and regulations from the South Carolina Department of Environmental Services' Bureau of Coastal Management (BCM)[4] and the Army Corps of Engineers restricting docks that apply to some of these properties, the result is the same.[5] Like the Vannattas' Property, these properties cannot—and do not—have docks. Moreover, the Vannattas provide no authority to support their conclusory argument that the application of other laws restricting the same property negates the application of a zoning ordinance restriction. *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting when a party fails to cite authority, the party is deemed to have abandoned the issue on appeal). In addition, the Vannattas acknowledge that at least four other properties are in the exact situation as their Property, with section 21-75(B)(2)'s restrictions as the only legal barriers to having a dock. Thus, we hold the Vannattas fail to meet their burden of proving section 21-75(B)(2) created spot zoning.

---

spot zoning); or (2) by changes to the zoning map around the parcel at issue (reverse spot zoning)).

[4] BCM was formerly known as the South Carolina Office of Ocean and Coastal Resource Management.

[5] The only dock in the Geographic Restriction Area is the community dock, which existed as of the effective date of the 2004 amendment.

The Vannattas also fail to prove that the Geographic Restriction deviated from the Town's Comprehensive Plan and that it did not promote the good of the common welfare. *See Ani Creation*, 440 S.C. at 283, 890 S.E.2d at 756-57 ("[W]hen the Court finds an ordinance constitutes spot zoning, 'the appropriate analysis is to closely scrutinize the following factors: (1) the adherence of the zoning to the City's comprehensive plan; and (2) promotion of the good of the common welfare but to only correct injustices which are clearly shown.'" (quoting *Knowles v. City of Aiken*, 305 S.C. 219, 223, 407 S.E.2d 639, 642 (1991))). "The Court will not overturn the action of the City if the decision is fairly debatable because the City's action is presumed to have been a valid exercise of power and it is not the prerogative of the Court to pass upon the wisdom of the decision." *Id.* at 278-79, 890 S.E.2d at 754 (quoting *Rushing v. City of Greenville*, 265 S.C. 285, 288, 217 S.E.2d 797, 799 (1975)).

The Sullivan's Island Comprehensive Plan for recreation and conservation "[r]ecognizes limited use of land for recreational purposes (i.e., docks where otherwise permitted by applicable laws and regulations), but otherwise envisions long-term preservation of the land without commercial activity or subdivision, with minimal impact on the view corridor."[6] This provision in the Town's Comprehensive Plan demonstrates the Town's priority of keeping the RC-1 and RC-2 Areas in their natural state, while also allowing for recreation. The provision in no way guarantees adjoining property owners the right to a dock; it acknowledges that docks must be permitted by "applicable laws and regulations," which include the Town's own ordinances as well as the requirements from BCM

---

[6] The Vannattas complain the Town failed to define the term "view corridor"; however, this term simply means an area with an open view. *See Pres. Soc'y of Charleston v. S.C. Dep't of Health & Envtl. Control*, 430 S.C. 200, 212, 845 S.E.2d 481, 487 (2020) ("Ordinarily, when a term is not defined in a statute, 'the Court must interpret the term in accordance with its usual and customary meaning.'" (quoting *Travelscape, LLC v. S.C. Dep't of Rev.*, 391 S.C. 89, 99, 705 S.E.2d 28, 33 (2011))); *id.* ("Courts should consider not merely the language of the particular clause being construed, but the undefined word and its meaning in conjunction with the whole purpose of the statute and the policy of the law." (quoting *Travelscape*, 391 S.C. at 99, 705 S.E.2d at 33)); *Historic Charleston Found. v. Krawcheck*, 313 S.C. 500, 502 n.1, 443 S.E.2d 401, 403 n.1 (Ct. App. 1994) (describing an ordinance that requires structures to be spaced in a way to "*preserv[e] the vista* from the East Bay Street, East Battery, Lockwood Drive or Halsey Boulevard as a "view corridor ordinance").

and the Army Corps of Engineers.  Furthermore, the BZA's denial of the Vannattas' dock permit does not thwart their enjoyment of the marsh.  They may use the public dock, and they still have the marsh views from the Property.  Thus, we find section 21-75(B)(2) adheres to the Town's Comprehensive Plan.

The Zoning Ordinance mandates the RC Areas "be preserved in their natural state . . . for the purpose of protecting the ecology, the adjoining property, and enhancing and protecting the safety and welfare of the Town and its residents."  § 21-67(B).  The Ordinance lists several findings of fact explaining the need for the RC Areas to be preserved in their natural state, including that the RC Areas (1) contribute to the health, safety, and welfare of the Town residents and visitors by providing "countless hours of pleasurable activity and rest and relaxation"; (2) can only fulfill its purpose by remaining "in a natural, undeveloped condition subject to the changing tides"; (3) "left in their natural state", protect "adjoining landowners and their property from the hazards of high tides and floods caused by hurricanes, tropical storms and seasonal tides"; and (4) are "of a particular beauty in [their] natural state so as to provide aesthetic value necessary to the public health, safety and welfare of the residents and visitors."  § 21-67(A).  The Geographic Restriction keeps the marsh within that area in its natural state by prohibiting docks.  Thus, the Town provides substantial justification for its RC-2 restrictions.

The Vannattas also contend that section 21-75(B)(2) is unnecessary to protect the common good because BCM and the Army Corps of Engineers are responsible for protecting the coastal region.  They assert that these agencies' approval of their proposed dock establishes the dock would not be a detriment to the common interest in the navigable waters on the creek.  However, the Vannattas provide no authority holding that a municipality's ordinances cannot be stricter than state and federal rules and regulations.  *See First Sav. Bank*, 314 S.C. at 363, 444 S.E.2d at 514 (noting when a party fails to cite authority, the party is deemed to have abandoned the issue on appeal).  In fact, BCM and the Army Corps of Engineers advised that the permits they issued did not relieve the Vannattas from complying with all local laws, ordinances, and zoning regulations.  In addition, BCM and the Army Corps of Engineers could change their policies, and, as the Town's findings note, the island's geography could also change so that the agencies would not protect it.  Finally, the Town has different interests that section 21-75(B)(2) addresses than what the state and federal regulations address, including recreation for all residents and visitors to the island and aesthetics. *See Bibco Corp. v. City of Sumter*, 332 S.C. 45, 53, 504 S.E.2d 112, 116-17 (1998) (upholding the city's exclusion of mobile homes in certain residential districts when maintaining aesthetics was among the city's justifications for the exclusion).

Finally, the Vannattas contend they should not be subject to the Geographic Restriction because the Property is on the edge of the area covered by the restriction. We rejected the same argument in *Ani Creation*, explaining "[z]ones must have beginning and terminating points. If the existence of divergent uses across zone boundary lines were taken *per se* as an appropriate basis for a constitutional violation, the entire zone plan in any municipality might well crumble by chain reaction." *Ani Creation*, 440 S.C. at 287, 890 S.E.2d at 759.

We, therefore, conclude section 21-75(B)(2) does not constitute illegal spot zoning because it applies to a large area with multiple owners, it adheres to the Town's Comprehensive Plan, and it promotes the good of the common welfare.

### B. Substantive Due Process

The Vannattas argue section 21-75(B)(2) violates substantive due process because the Geographic Restriction and Dock Length Restriction are arbitrary, capricious, or unreasonable. We disagree.

"In reviewing substantive due process challenges to municipal ordinances, a court must consider whether the ordinance bears a reasonable relationship to any legitimate interest of government." *Dunes W. Golf Club, LLC v. Town of Mount Pleasant*, 401 S.C. 280, 296, 737 S.E.2d 601, 609 (2013) (quoting *McMaster*, 395 S.C. at 505, 719 S.E.2d at 663). "In order to prove a denial of substantive due process, a party must show that he was arbitrarily and capriciously deprived of a cognizable property interest rooted in state law." *Id.* (quoting *Harbit v. City of Charleston*, 382 S.C. 383, 394, 675 S.E.2d 776, 782 (Ct. App. 2009)). "A legislative body does not deny due process simply because it does not permit a landowner to make the most beneficial use of its property." *Id.* at 296, 737 S.E.2d at 609-10 (quoting *Harbit*, 382 S.C. at 394, 675 S.E.2d at 782). "Courts cannot become city planners but can only correct injustices when they are clearly shown to result from municipal action." *Id.* at 296, 737 S.E.2d at 610 (quoting *Knowles*, 305 S.C. at 222, 407 S.E.2d at 642).

The Vannattas assert section 21-75(B)(2) violates substantive due process for "virtually the same reasons as discussed above regarding the illegal spot zoning issues." Correspondingly, for the same reasons we stated above, we hold the Vannattas fail to establish section 21-75(B)(2) was arbitrary and capricious. The Vannattas offer no authority to support their arguments that the Geographic Restriction only applies to lots upon which no other law prohibits a dock and that a

local municipality cannot have stricter requirements than BCM and the Army Corps of Engineers. *See First Sav. Bank*, 314 S.C. at 363, 444 S.E.2d at 514 (noting when a party fails to cite authority, the party is deemed to have abandoned the issue on appeal). Further, both the federal and state permits advised the Vannattas they must comply with local laws. The Town's Comprehensive Plan states section 21-75(B)(2) "was a result of substantial process of public involvement during 2002-2004." The Zoning Ordinance lists numerous legitimate governmental interests section 21-75(B)(2) serves by keeping part of the RC-2 Area in its natural state and prohibiting docks longer than 300 feet to access narrow creeks, including recreation, environmental/ecological concerns, and aesthetics. § 21-67(A); *see Dunes W. Golf Club, LLC*, 401 S.C. at 296, 737 S.E.2d at 609 ("In reviewing substantive due process challenges to municipal ordinances, a court must consider whether the ordinance bears a reasonable relationship to any legitimate interest of government." (quoting *McMaster*, 395 S.C. at 505, 719 S.E.2d at 663)). Accordingly, we hold the Vannattas have not met their burden of establishing a substantive due process violation.

## C. Equal Protection

The Vannattas argue that section 21-75(B)(2) violates the Equal Protection Clause. We disagree.

The Equal Protection Clause proclaims, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. When the matter does not involve a suspect or quasi-suspect class and no fundamental right is involved, a zoning ordinance should be tested under the "rational basis" standard. *Bibco Corp.*, 332 S.C. at 52, 504 S.E.2d at 116. Applying the rational basis standard, a court will find no Equal Protection Clause violation as long as

> (1) there is a plausible policy reason for the classification; (2) the facts on which the classification is based rationally may have been considered to be true by the decision maker; and (3) the relationship of the classification to the goal is not so attenuated as to render the distinction arbitrary or irrational.

*Ani Creation*, 440 S.C. at 285, 890 S.E.2d at 758.

The actual motivations of the enacting governmental body are entirely irrelevant in determining whether there is a legitimate government purpose. *Bibco Corp.* 332 S.C. at 53, 504 S.E.2d at 116. "A reviewing court need only decide what goals the government body could have been pursuing." *Id.* "A party challenging a legislative enactment under rational basis review 'must negate every conceivable basis which might support' the enactment and, therefore, has a 'steep hill to climb.'" *Ani Creation*, 440 S.C. at 285, 890 S.E.2d at 758 (quoting *Bodman v. State*, 403 S.C. 60, 69-70, 742 S.E.2d 363, 367-68 (2013)).

Once more, the Vannattas refer to their previous arguments in support of their Equal Protection issue. We hold they again fail to meet their burden of establishing section 21-75(B)(2) is invalid. *See id.* at 279, 890 S.E.2d at 754-55 ("The burden of establishing the invalidity of a zoning ordinance is on the party attacking it to establish by clear and convincing evidence that the acts of the city council were arbitrary, unreasonable, and unjust."). As stated, the Zoning Ordinance provides numerous legitimate governmental interests section 21-75(B)(2) serves by keeping part of the RC-2 Area in its natural state and prohibiting docks longer than 300 feet to access narrow creeks, including recreation, environmental/ecological concerns, and aesthetics, especially the view from the Ben Sawyer Bridge, which differentiates the area within the Geographic Restriction from other parts of the RC-2 Area. The area is free of docks, except for the public dock that predated section 21-75(B)(2) and, thus, was grandfathered. The Vannattas are simply unable to climb the steep hill necessary to establish section 21-75(B)(2)'s invalidity. *See Ani Creation*, 440 S.C. at 285, 890 S.E.2d at 758 (stating the party challenging the validity of a law under rational basis review "has a 'steep hill to climb'" (quoting *Bodman*, 403 S.C. at 69-70, 742 S.E.2d at 367-68)).

## II. Variance

The Vannattas argue the BZA unjustifiably denied their variance request. We disagree.

"Granting a variance is an exceptional power[,] which should be sparingly exercised and can be validly used only where a situation falls fully within the specified conditions." *Rest. Row Assocs. v. Horry County*, 335 S.C. 209, 215, 516 S.E.2d 442, 445-46 (1999). "A strong presumption exists in favor of the validity and application of zoning ordinances." *Id.* at 215, 516 S.E.2d at 446. The courts may only overturn the decision of a municipal zoning board "if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has

abused its discretion." *Id.* at 216, 516 S.E.2d at 446; *see* S.C. Code Ann. § 6-29-840 (Supp. 2025) (providing "[t]he findings of fact by the board of appeals must be treated in the same manner as a finding of fact by a jury" and "[i]n determining the questions presented by the appeal, the court must determine only whether the decision of the board is correct as a matter of law"); *Venture Eng'g for DT LLC v. Horry Cnty. Zoning Bd. of Appeals*, 433 S.C. 419, 426, 858 S.E.2d 638, 642 (Ct. App. 2021) (stating an appellate court applies the same standard of review as the circuit court). "The appellate court gives 'great deference to the decisions of those charged with interpreting and applying local zoning ordinances.'" *Arkay, LLC v. City of Charleston*, 418 S.C. 86, 91, 791 S.E.2d 305, 308 (Ct. App. 2016) (quoting *Gurganious v. City of Beaufort*, 317 S.C. 481, 487, 454 S.E.2d 912, 916 (Ct. App. 1995)). The variance applicant bears the burden of proving entitlement to a variance. *Rest. Row Assocs.*, 335 S.C. at 216, 516 S.E.2d at 446.

A zoning board of appeals may grant a variance due to unnecessary hardship upon finding:

> (a) there are extraordinary and exceptional conditions pertaining to the particular piece of property;
> (b) these conditions do not generally apply to other property in the vicinity;
> (c) because of these conditions, the application of the ordinance to the particular piece of property would effectively prohibit or unreasonably restrict the utilization of the property; and
> (d) the authorization of a variance will not be of substantial detriment to adjacent property or to the public good, and the character of the district will not be harmed by the granting of the variance.

S.C. Code Ann. § 6-29-800 (Supp. 2025).

This Court set forth guidelines for determining unnecessary hardship: (1) "a claim of unnecessary hardship cannot be based upon conditions created by the owner," and "one who purchase[d] the property after the enactment of a zoning regulation [cannot] complain that a nonconforming use would work an unnecessary hardship upon him"; (2) "there must at least be proof that a particular property suffer[ed] a singular disadvantage through the operation of a zoning regulation"; and (3) "financial hardship does not automatically constitute unnecessary hardship." *Rest. Row Assocs.*, 335 S.C. at 217-18, 516 S.E.2d at 447.

First, because the Vannattas purchased the Property on July 22, 2014, a decade after the enactment of section 21-75(B)(2) in 2004, they cannot complain about its restrictions.  The Vannattas, however, assert they have established a case of unnecessary hardship because, although they purchased the Property after the enactment of section 21-75(B)(2), nothing in their deed or legal description of the Property put them on notice that they would not be able to build a dock on their marsh-front Property.  This argument has no merit as the Vannattas cannot claim ignorance of the law as their excuse.  *See Oxford Fin. Cos. v. Burgess*, 303 S.C. 534, 539 n.1, 402 S.E.2d 480, 482 n.1 (1991) ("Ignorance of the [or a] law, which everyone is bound to know, excuses no man." (quoting *Ignorantia juris quod quisque tenetur scire, neminem excusat*, BLACK'S LAW DICTIONARY 673 (5th ed. 1979)).  Furthermore, before they closed on the Property, the Vannattas requested a variance from the Town's Zoning Ordinance setback requirement to build a pool, showing they were aware the Town had zoning ordinances that affected the Property.

The Vannattas next assert they satisfied all four statutory factors, using many of the same assertions from their constitutional arguments.  These assertions are as unavailing here as they were to the constitutional arguments.  The Vannattas contend there are exceptional circumstances regarding the Property because their dock would be at the edge of the Geographic Restriction, and the remaining area would still fulfill the restriction's purpose.  This argument is untenable because "[z]ones must have beginning and terminating points."  *Ani Creation*, 440 S.C. at 287, 890 S.E.2d at 759.  If the Vannattas received a variance, the BZA may be compelled to grant the Vannattas' neighbors variances and section 21-75(B)(2)'s restrictions "might well crumble by chain reaction."  *Id.*

The Vannattas assert the Dock Length Restriction serves no purpose at the proposed location because section 21-75(B)(2) does not affect most of the nearby properties, and BCM had determined their dock would not interfere with navigation.  As stated above, navigation is not the Town's only interest; section 21-75(B)(2)'s restricting docks to 300 feet to access narrow creeks serves numerous legitimate governmental interests, including recreation, environmental/ecological concerns, and aesthetics; thus, the restriction is a valid exercise of the Town's power.  *See Bob Jones Univ. v. City of Greenville*, 243 S.C. 351, 362, 133 S.E.2d 843, 848 (1963) ("[T]he Court has no power to zone property, and the right to zone is normally reserved under the police power to the legislative branches of government."); *Ani Creation*, 440 S.C. at 278-79, 890 S.E.2d at 754 (stating the Court will uphold the municipality's decision if it is fairly debatable because the

action "is presumed to have been a valid exercise of power and it is not the prerogative of the Court to pass upon the wisdom of the decision" (quoting *Rushing*, 265 S.C. at 288, 217 S.E.2d at 799)). The Vannattas provide no authority to support the contention that BCM's and the Army Corps of Engineers' regulations limit the Town's zoning authority. *See First Sav. Bank*, 314 S.C. at 363, 444 S.E.2d at 514 (noting when a party fails to cite authority, the party is deemed to have abandoned the issue on appeal). The proposed dock here is 486 feet long to access a 62-foot-wide creek at the dock site. If the Vannattas receive a variance, all others similarly situated could receive one.

Next, the Vannattas correctly contend that they are not required to prove that the Property has been deprived of all its enjoyment or economic use. *See Rest. Row Assocs.*, 335 S.C. at 217, 516 S.E.2d at 446 ("Variance applicants are not required to prove that without the variance there exists no feasible conforming use for the property in question in order to show unnecessary hardship."). However, their claim that section 21-75(B)(2) acts as an absolute barrier to the rest, relaxation, and recreation meant to be afforded by preserving the RC-2 Area District lacks merit. The Vannattas are still able to use the Property as their home, they benefit from the open vista of the RC-2 Area, and they can access the marsh and creek from the public dock, just like the others who own property adjoining the RC-2 Area between Station 18 and Station 22.

The Vannattas assert their variance would not cause substantial detriment to adjacent property or the public good. We disagree. As stated in addressing the Vannattas' constitutional issues, section 21-75(B)(2) serves legitimate governmental interests and the public good by keeping the area within the Geographic Restriction dock-free. If the Vannattas receive a variance, others may as well, and it would negatively affect the view corridor.

Finally, the Vannattas contend that neighboring properties to the west, outside the area covered by the Geographic Restriction, have docks extending over 300 feet to access the creek at the same width as the proposed dock. However, in the staff report, Charles Dayton, the Director of Planning and Zoning, asserted that since the 2004 amendment, the Town has not granted any variances from the Geographic Restriction or the Dock Length Restriction. Drayton also explained that the dock the Vannattas described as longer than 300 feet was approved in 2021 because it accessed a 207-foot-wide creek and thus met the exception's requirements.

We hold the Vannattas fail to establish they suffered an unnecessary hardship due to section 21-75's restrictions and conclude the BZA's decision was not arbitrary and capricious. Accordingly, we affirm the denial of the variance.

## III. Conclusion

For the above reasons, we hold the Vannattas fail to meet their burden of proving section 21-75(B)(2) is unconstitutional or that they were entitled to a variance. Accordingly, the circuit court's order affirming the BZA's denial of the Vannattas' request for a dock permit is

**AFFIRMED.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**